UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HALL & ASSOCIATES,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br><br>    Defendant. | Civil Action No. 13-830 (JEB) |

## MEMORANDUM OPINION

This Freedom of Information Act case has its origins in Environmental Protection Agency policies related to New Hampshire's Great Bay estuary. Plaintiff Hall & Associates, a consulting group that believes EPA has been too stringent, filed eighteen FOIA requests seeking information related to the agency's National Pollutant Discharge Elimination System permit program. EPA produced three responsive records totaling 25 pages but withheld parts of one two-page draft letter pursuant to FOIA Exemption 5; it also assessed Plaintiff $431 in fees. Believing the withholding and fees improper, Plaintiff filed suit, and both parties have now moved for summary judgment.

Plaintiff spills much ink castigating EPA for its policy decisions related to discharge into the estuary. These are, of course, concerns the Court cannot adjudicate in this case; whatever the merits of Plaintiff's substantive claims, they have no bearing on EPA's FOIA obligations. As to the specific arguments that the Court may consider, it finds that EPA's FOIA-related decisions are amply supported by the record. As a result, it will grant Defendant's Motion and deny Plaintiff's.

**I.     Background**

This dispute arose from a series of decisions regarding the ecology of the Great Bay estuary, which is located in the Granite State. In 2005, EPA directed the state's Department of Environmental Services to develop "numeric nutrient criteria" that would govern the water-treatment obligations of the cities surrounding the estuary. From 2006 to 2008, EPA and the Department worked to collect and review data that would inform those criteria. As Plaintiff tells it – the Court does not endorse these facts but merely presents them, as they have little bearing on the disposition of this FOIA case – EPA disregarded the evidence it collected and, "[d]espite numerous objections from the regulated community and various [scientists]," promulgated regulations based on certain causes of ecological deterioration that "no valid analysis" could support. See Pl. Mot., Exh. 1 (First FOIA Request) at 3-4. Plaintiff and its clients, it would appear, are unhappy with the rigor of these regulations.

In response to this "scientific fraud," the major cities surrounding Great Bay formed the Great Bay Coalition to review the regulatory and scientific bases for EPA's actions. See Pl. Mot. at 3. Noting numerous "fundamental scientific errors with the document," id. at 4, the Coalition sought to subject the agency's decisions to peer review. EPA agreed but, according to Plaintiff, "refused to allow any community involvement in the peer review" and "[u]ltimately . . . limited the peer review to the skewed record previously developed." Id.

The community's response was swift. In a letter dated May 4, 2012, the Coalition, through Plaintiff, notified the EPA Administrator and Inspector General that it believed EPA Region 1 – the office that administers the NPDES program and issues water-related permits in New Hampshire – had committed "science misconduct" during the development of the Great Bay estuary rules. See Compl., ¶¶ 2, 12; First FOIA Request at 12. The Coalition demanded

that an independent panel of experts be appointed to take over an impending review of Great Bay water-quality compliance and permitting. It asked, further, that the Inspector General open an investigation into Region 1's actions. See id., ¶ 12; Def. Mot., Exh. 1 (Declaration of Stephen Perkins), ¶ 6; First FOIA Request at 1-2.

In a letter dated September 27, 2012, Nancy Stoner, EPA's Acting Assistant Administrator for the Office of Water responded to the Coalition's allegations. Stoner notified the Coalition that EPA had "initiated a careful review" of the concerns raised in the letter, and she concluded that EPA "ha[d] not seen any evidence that Region I . . . engaged in scientific misconduct." Pl. Mot., Exh. 4 (Letter from Nancy Stoner to Great Bay Coalition) at 1.

Stoner's correspondence did not placate the Coalition. According to Plaintiff, the letter "did not offer any explanation as to why any of the specific factual allegations raised by the Coalition were actually in error," even though "it was these specific factual/scientific statements that were the basis" for the scientific-misconduct allegations. Pl. Mot. at 7; Perkins Decl., ¶ 5. Acting on its dissatisfaction, the Coalition then filed eighteen separate FOIA requests. Following several weeks of correspondence seeking to clarify the scope of those requests, EPA notified Plaintiff that "[d]ocuments transmitted by Region 1 to Headquarters to refute the specific scientific allegations in the FOIA requests were deemed responsive." Perkins Decl., ¶ 11.

In total, EPA located four responsive records totaling 26 pages. See id., ¶ 16. Although the Region claims that all four records contained deliberative material, it nonetheless released three of the four after determining that doing so would cause no harm to EPA programs or the individuals involved. It did, however, redact portions of one draft letter – namely, a draft response to Plaintiff's accusations of misconduct prepared by a Region 1 lawyer at the request of

the central office. EPA indicated that it had redacted parts of the letter to protect the agency's deliberative process, and it invoked FOIA Exemption 5 to support that decision. See id., ¶¶ 16, 18.

Since FOIA regulations define Plaintiff as a "commercial requester," see 40 C.F.R. § 2.107(c)(1), EPA assessed the organization $413.90 "for the time spent searching for records, reviewing the records for possible disclosure, and for the cost of each page of duplication." Def. Mot., Exh. 2 (Declaration of Cristeen Schena), ¶ 6. That time included 1.5 hours EPA staff spent searching for relevant documents and 8.5 hours a Region 1 attorney spent reviewing the collected documents to determine whether they were responsive to Plaintiff's FOIA requests, deciding whether relevant exemptions applied, discussing with program staff whether materials deemed deliberative should nonetheless be disclosed, summarizing his findings, and coordinating the Region's response with EPA headquarters. See id., ¶¶ 7-8.

After exhausting its administrative remedies, Plaintiff filed this action, arguing that the agency's decision to invoke the protection of Exemption 5 was improper and that the fees charged were unreasonable. The Parties filed cross-motions for summary judgment, to which the Court now turns.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to

construe the evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment.  See Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency bears the ultimate burden of proof.  See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," the Freedom of Information Act "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

After briefly addressing whether EPA's search for documents was reasonable and adequate, the Court will turn to the gravamen of the Motions: whether the fees charged to Plaintiff for that search were appropriate and whether EPA sufficiently justified its withholdings under Exemption 5.

A. Adequacy of the Search

"An agency fulfills its [search] obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether

6

there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that "set [] forth . . . the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Such affidavits or declarations enjoy a presumption of good faith and, absent contrary evidence, they are sufficient to show that an agency complied with FOIA. See Oglesby, 920 F.2d at 68.

Plaintiff does not challenge the adequacy of Defendant's search for documents. The Court, moreover, independently finds that EPA's search was adequate. Stephen Perkins, Region 1's Director of Ocean and Coastal Policy and Programs, explains the agency's search as follows: Plaintiff's (revised) requests were received and forwarded to the Office of Ecosystem Protection, the body responsible for NPDES permits and "the only office within EPA Region 1 involved in developing technical responses in connection to the scientific misconduct allegations." Perkins Decl., ¶ 12. EPA lawyers instructed OEP Management – as well as rank-and-file staff members – that they were to retrieve "any documents that were transmitted by Region 1 to Headquarters to respond to the scientific misconduct allegations." Id. Those were then provided to counsel, who "reviewed the potentially responsive documents to determine whether they were in fact responsive to the revised FOIA request and, furthermore, whether any of the information contained therein was exempt from disclosure." Id., ¶ 14.

This human-centered approach is entirely proper. Indeed, it is reasonable for an agency to limit its search to asking staff members familiar with all aspects of a government program to find the relevant documents. See Roman v. Dep't of Air Force, No. 12-1381, 2013 WL 3388393, at *7 (D.D.C. July 9, 2013); see also Anderson v. U.S. Dep't of State, 661 F. Supp. 2d 6, 11 n.2 (D.D.C. 2009) (holding that "[m]anually searching . . . records without using specific search terms could reasonably be expected to produce the requested information given . . . that those conducting the search were familiar with the request"). EPA's efforts, therefore, were "reasonably calculated to uncover all relevant documents." Truitt, 897 F.2d at 542. The Court thus finds that the search was adequate.

B. Reasonable Fees

Although it concedes that point, Plaintiff does object to the fees charged on the ground that the amount of time EPA staff spent on the search was unreasonable. In a second declaration, Cristeen Schena, the Region 1 FOIA Officer, avers that EPA's request for payment of $413.90 was based on the following rates applicable to commercial requesters: (1) 1.5 hours of searching by two managers at $41 per hour; (2) 8.5 hours of review by one manager at $41 per hour; and (3) 26 hard-copy pages of the disclosed documents at 15 cents per page. See Schena Decl., ¶ 7. Plaintiff does not contest that it is a commercial requester, nor does it dispute the 1.5 hours of search time, the duplication costs, or that the hourly rates applied are consistent with EPA regulations. Plaintiff's challenge thus boils down to the argument that "the Region . . . claiming it took 8.5 hours to read twenty-three pages . . . is inappropriate." Pl. Mot. at 18.

That argument comes up short. As the agency explained, processing Plaintiff's request required that an attorney spend 8.5 hours reviewing the documents collected from Region 1 managers and staff, determining whether any FOIA exemption applied, conferring with program

8

staff – through multiple rounds of discussion – about whether materials deemed deliberative should nonetheless be disclosed on a discretionary basis, summarizing the attorney's analysis in a memorandum, and coordinating the Region's response with EPA headquarters. See Schena Decl., ¶ 8. Plaintiff offers no substantive response to EPA's argument, instead asserting that some of the documents reviewed "clearly" do not fall within any FOIA exemption, see Pl. Mot. at 19, and that the 8.5 hours the agency spent reviewing 26 pages of responsive records is "inappropriate." Id. at 20. A plaintiff's bare allegation that a fee assessment is unreasonable, however, is insufficient to avoid summary judgment. See Nat'l Treas. Empl. Union v. Griffin, 811 F.2d 644, 650 (D.C. Cir. 1987). As Plaintiff has offered nothing more, and as Defendant's explanation seems eminently reasonable on its face, the Court finds for EPA on this issue.

    C. Exemption 5

Plaintiff's case, therefore, comes down to the application of Exemption 5. Under that provision, an agency need not disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 thus protects documents that would be unavailable to an opposing party through discovery. See United States v. Weber Aircraft Corp., 465 U.S. 792, 800 (1984); Martin v. Office of Special Counsel, 819 F.2d 1181, 1184-85 (D.C. Cir. 1987) (Exemption 5 "unequivocally" incorporates "all civil discovery rules"). Documents that fall within the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege are exempt from disclosure. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148–49 (1975); Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). Defendant invokes only the deliberative-process privilege here.

That particular privilege is intended "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (internal quotation marks and citation omitted). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id.; see also Dow Jones & Co., Inc. v. DOJ, 917 F.2d 571, 573-74 (D.C. Cir. 1990). To fall under the protection of the deliberative-process privilege, withheld material must be both "predecisional" and "deliberative." Mapother v. DOJ, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Material is "predecisional" if it was "generated before the adoption of an agency policy." Coastal States Gas Corp., 617 F.2d at 866. It is "deliberative" if it "reflects the give-and-take of the consultative process." Id.

Plaintiff launches two broad attacks on Defendant's position. First, it argues that EPA cannot avail itself of the deliberative-process privilege "to cover up agency misconduct." Pl. Mot. at 10. It then contends that, even if the privilege does apply to parts of the letter, it cannot protect from disclosure the purely factual material contained therein. See id. at 11.

1. *Government Misconduct*

Under the government-misconduct exception to the deliberative-process privilege, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997) (internal quotation marks omitted).

Although other courts have not been entirely consistent in applying the government-misconduct exception to FOIA cases – most of the black-letter law on the issue comes from cases dealing with grand-jury documents – the Court need bridge this divide, because Plaintiff's argument would not succeed even if the exception did apply.

The party seeking release of withheld documents under the government-misconduct exception must "provide an adequate basis for believing that [the documents] would shed light upon government misconduct." Judicial Watch of Florida, Inc., v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 15 (D.C. Cir. 2000). While there is little case law to guide the Court on what quantum of evidence must be shown to support the exception, courts have recognized the need to apply the exception narrowly because

> [i]f every hint of marginal misconduct sufficed to erase the privilege, the exception would swallow the rule. In the rare cases that have actually applied the exception, the "policy discussions" sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government. The very discussion, in other words, was an act of government misconduct, and the deliberative process privilege disappeared.

ICM Registry, LLC v. U.S. Dep't of Commerce, 538 F. Supp. 2d 130, 133 (D.D.C. 2008). Although Plaintiff points to several instances of purported misconduct here, it has provided no evidence rising anywhere close to this level. General criticisms of the merits of policy decisions do not amount to evidence of misconduct.

The group begins by arguing that the agency acted improperly when it told "the 2010 peer reviewers not to address the Coalition's factual and scientific concerns," and that, as a result, "the review was biased against the issues raised by Petitioners." Pl. Mot. at 15-16. These allegations are being litigated in other forums and are not before this Court. Even if they turned

11

out to be true, moreover, nothing in the redacted portions of the letter speaks to any potential misconduct.

Next, Plaintiff asserts, without any basis in the record, that "it is clear that the Region did more than just draft 'recommended positions and language for consideration by EPA Headquarters in responding to Plaintiff's allegations [of] scientific error" but, in fact, "wr[ote] the response to the Coalition's scientific misconduct allegations." Pl. Mot. at 17. This argument is puzzling for two reasons. First, it is flatly contradicted by the record: Stephen Perkins's declaration establishes that the Region prepared only a draft for Headquarters' review, and the agency in fact produced to Plaintiff the limited portions of the draft that were left unchanged in the final version of the letter. See Perkins Decl., ¶ 18. Second, it is unclear exactly what would be different if Region 1 had written the response. Perhaps, in that case, Plaintiff would have had a stronger argument that the agency should have disclosed the entire letter, but that claim would have been nonsensical, as EPA already sent the final version of the letter to Plaintiff.

In these circumstances, the Court finds that the events Plaintiff cites "do not reflect any governmental impropriety, but rather are 'part of the legitimate governmental process intended to be protected by Exemption 5.'" Dema v. I.R.S., No. 78–3992, 1979 U.S. Dist. LEXIS 9025, at *6 (N.D. Ill. Oct. 22, 1979) (quoting Tax Reform Research Group v. I.R.S., 419 F. Supp. 415, 426 (D.D.C. 1976)).

      2. *Factual Material*

Plaintiff argues next that Defendant improperly withheld factual information from the letter that is not protected by Exemption 5. See Pl. Mot. at 16. Although the point is not made with any precision, this is, in essence, a segregability argument, and the Court has a *sua sponte* obligation to address such issues. See Johnson v. Executive Office for U.S. Attorneys, 310 F.3d

12

771, 776 (D.C. Cir. 2002). It is true that the deliberative-process privilege applies only to documents "reflecting advisory opinions, recommendations and deliberations," as opposed to pure facts. Sears, 421 U.S. at 132 (citation omitted). That limitation makes sense, as the privilege exists to "ensure[] that persons in an advisory role [will] be able to express their opinions freely." See McKinley v. Bd. Of Governors of Fed. Reserve Sys., 647 F.3d 331, 340 (D.C. Cir. 2011) (emphasis added) (quoting Ryan v. Dep't of Justice, 617 F.2d 781, 789-90 (D.C. Cir. 1980)).

Plaintiff's argument on this front, however, consists mainly of conclusory statements that are of no help. See Pl. Mot. at 12 ("letter must contain factual information due to the nature of the allegations") (emphasis added); id. (redacted portions are likely factual in nature") (emphasis added); id. ("the Region's claim . . . is obviously false") (emphasis added). Despite pages and pages of hand-waving, the group does not address the sworn testimony of Stephen Perkins, who explained in no uncertain terms that the withheld portions of the draft letter contain candid opinions and potential counterarguments that the agency was considering including in its response to Plaintiff's allegations. See Perkins Decl., ¶ 19. Plaintiff has certainly not presented sufficient evidence to rebut the presumption of good faith afforded to that declaration. See Elec. Privacy Info. Ctr. v. Office of Director of Nat'l Intelligence, No. 12-1282, 2013 WL 5548809, at *3 (D.D.C. Oct. 9, 2013) (declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims") (internal quotation marks omitted) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Nonetheless, out of an abundance of caution, the Court, at Plaintiff's request, ordered EPA to produce the unredacted letter for *in camera* review. Having now compared the redacted and unredacted versions of the letter, the Court agrees with Perkins's assertion that the portions

13

redacted contain the Region's "proposed positions and recommended language for consideration by EPA management in responding to Plaintiff's allegations of scientific error," the disclosure of which would have a chilling effect on the Agency's ability to hold open and frank discussions regarding the Agency's responses to inquiries. Perkins Decl., ¶¶ 18-19.

It is worth noting, in addition, that any doubts about the propriety of EPA's actions in this case should have been allayed by the care with which the agency segregated and disclosed the portions of the letter that were arguably not exempt. Indeed, the Court is of the opinion that the agency was perhaps more liberal with its disclosures that it had to be under the prevailing law.

### 3. *Predecisional*

Plaintiff's Motion also makes passing reference to the established principle that the privilege applies only to predecisional records. It does not, however, contain any reasoning on that point. To the extent the Court can decipher an argument from the meager substantive content in the Motion, the group seems to object to EPA's withholding of the letter because it relates to events that have already occurred – namely, Region 1's 2006-2009 regulatory decisions. That argument, if it is the one Plaintiff intended, holds no water. Deliberations over how to respond to allegations concerning a past event are without a doubt "predecisional" to the actual response – in this case, the final response letter that EPA issued on September 27, 2012. The disputed draft letter contained recommended positions and language for consideration by EPA Headquarters in responding to Plaintiff's allegations of scientific error. That the letter was written after Region 1 had made its regulatory decisions is obviously irrelevant. The Court, accordingly, finds that EPA properly invoked Exemption 5 to justify withholding portions of the Region's June 5, 2012, draft response letter.

**IV. Conclusion**

For the foregoing reasons, the Court will grant EPA's Motion for Summary Judgment and deny Plaintiff's. A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 4, 2014